# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00072-CR

**Derrick Sorrells, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-07-204188, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Derrick Sorrells guilty of the first-degree felony of possession of a controlled substance, cocaine, with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West Supp. 2009). The State alleged two prior convictions for possession of a controlled substance. The trial court found one of the enhancement allegations "true" and assessed Sorrells's punishment at twenty years' imprisonment. In three issues, Sorrells contends that: (1) the evidence is legally and factually insufficient to support his conviction, and (2) his trial counsel provided ineffective assistance. Because we conclude that the evidence is legally and factually sufficient to support Sorrells's conviction and that Sorrells has failed to carry his burden of proving that his trial counsel provided ineffective assistance, we affirm the trial court's judgment.

**BACKGROUND**

On July 18, 2007, several police officers in the intelligence unit of the Austin police department began surveilling a house in Austin based on information they received that Sorrells might be at the house. The officers were searching for Sorrells because they had a warrant for his arrest. At some point, some of the officers began looking for Sorrells on adjacent streets and spotted him at a nearby house. As a result, all of the officers moved and set up surveillance at the second house. One of the officers, Luis Cadena, was using binoculars to view the activity around the house when he saw Sorrells appear near a Nissan Xterra that was parked on the property. Cadena noticed two other individuals also appear near the car. Cadena testified that Sorrells approached the car carrying a blue and white ice chest. According to Cadena, Sorrells opened the cargo door in the back of the car, placed the cooler inside, and shut the door. Sorrells then walked around to the rear right passenger door of the car, opened the door, and got inside. Meanwhile, the other men Cadena had observed with Sorrells also climbed into the car. The men then left in the car.

Patrol officers who had been coordinating with the intelligence officers conducted a traffic stop of the car. One of the patrol officers who made the traffic stop, Steven Beasley, recorded the stop with a video recorder in his patrol car. In the video and in testimony at trial, Beasley stated that as officers pulled the car over, he saw one of the two backseat passengers reach over the back of the seat, lift up the lid of the ice chest, and reach into the ice chest. Beasley could not see whether it was the man in the left rear seat or the right rear seat who reached into the ice chest, but he stated in the video and at trial that he was certain that Sorrells was the man seated in the right rear seat because he had directed Sorrells out of the car and handcuffed him.

2

Cadena arrived at the car about ten seconds after the initial stop. He testified that the driver immediately got out of the car and surrendered. Three passengers remained in the car. Officers began directing each of the passengers out, one at a time. Officers found a vanilla extract bottle filled with liquid and a bag containing a green leafy substance in plain view on the left rear floorboard of the car. The green leafy substance was later determined to be marijuana, and the liquid in the bottle was found to be phencyclidine (PCP). Inside the ice chest that was located in the rear cargo compartment of the car, officers found two bags, one containing a green, leafy substance that was later determined to be marijuana, and the other containing a white, rock-like substance that was later determined to be cocaine. Officers found $537.21 on Sorrells. They did not find a large amount of money on any of the other people in the car.

A chemist testified that the cocaine found in the ice chest weighed approximately thirty-two grams. Cadena testified that based on his five years of street-patrol experience, the cocaine found in the ice chest was a "very large" amount of cocaine consistent with an amount a dealer would carry for deliveries. Another intelligence officer, Jesse Sanchez, testified that based on his nine years of experience with the Austin Police Department, the amount of cocaine found in the ice chest was not consistent with personal use but was consistent with an amount carried by drug dealers. Sorrells was ultimately arrested and charged with possession of and intent to deliver the cocaine found in the ice chest, and the person sitting next to him in the left rear seat of the car was arrested and charged with possession of the drugs found on the left rear floorboard. The driver of the car and the front passenger were both released from the scene.

3

After a trial, a jury convicted Sorrells of possession of a controlled substance with intent to deliver. Sorrells elected to have the trial court assess punishment. In the indictment, the State alleged that Sorrells was a habitual offender based on two alleged previous felony convictions for possession of a controlled substance. At the punishment hearing, Sorrells pled "not true" to the enhancement allegations. After a hearing, the trial court found that the State proved one of the previous convictions beyond a reasonable doubt but did not do so for the other one. The trial court sentenced Sorrells to twenty years in prison. This appeal followed.

## DISCUSSION

On appeal, Sorrells asserts that: (1) the evidence is legally and factually insufficient to support his conviction, and (2) his trial counsel provided ineffective assistance. We address each issue below.

### *Legal and Factual Sufficiency*

In determining the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the verdict. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).

In reviewing factual sufficiency, we must weigh all the evidence in a neutral light and set the finding aside only if the evidence is so weak that the verdict seems clearly wrong or

4

manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). An appellate court must be appropriately deferential to the jury's verdict in order to avoid substituting its own judgment for that of the factfinder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Id*.

Sorrells challenges the legal and factual sufficiency of the evidence to support each of the three elements of the offense of possession of a controlled substance with intent to deliver. To prove the offense, the State must show that the defendant: (1) possessed a controlled substance in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. Tex. Health & Safety Code Ann. §§ 481.002(38), .112(a) (West Supp. 2009); *see Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd). We address the elements below.

### A.    Possession and Knowledge

To prove possession and knowledge of contraband, the State must prove that the defendant: (1) exercised control, management, or care over the substance; and (2) knew the substance was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Where, as here, the accused is not in exclusive possession of the place where the substance is found, his control over and knowledge of the contraband cannot be established unless there are additional independent facts and circumstances that link him to the contraband. *See id*. at 406. The purpose of linking the accused to the contraband is to protect innocent bystanders from conviction based

5

solely on their proximity to the contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

There are several factors by which a defendant may, under the unique circumstances of each case, be sufficiently linked to the contraband, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Figueroa*, 250 S.W.3d at 500. It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Id*. at 501. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Figueroa*, 250 S.W.3d at 501.

The State established the first link—the defendant's presence when a search is conducted—because officers testified that Sorrells was in the car when the car was stopped and searched. The third link—the defendant's proximity to and the accessibility of the contraband—was

6

established by officers' testimony that Sorrells was in the right rear seat of the car and that the ice chest was within Sorrells's reach in the cargo compartment behind the seat. The State also established the tenth link—whether other contraband or drug paraphernalia were present—because officers found marijuana and PCP in plain view on the rear left floorboard of the car. The thirteenth factor—whether the defendant was found with a large amount of cash—is supported by officers' testimony that Sorrells was found carrying $537.21, while none of the other people in the car were found carrying a large amount of cash.[1]

In addition to the links established during the searches of Sorrells and the car, the State also established other links between Sorrells and the cocaine found in the ice chest. For example, Officer Cadena testified that he saw Sorrells carrying the ice chest and placing it in the rear, cargo compartment of the car. Further, Officer Beasley testified that when he was in his patrol car behind the car carrying Sorrells, he saw an arm reach over the back seat of the car, lift up the lid of the ice chest, and reach inside. Several officers also testified that Sorrells was seated in the rear right seat of the car, and Officer Beasley testified that the only two people who could have reached the ice chest were the two passengers in the rear seat.

---

[1] Sorrells argues that $537.21 does not qualify as a "large amount of cash." However, at least two of our sister courts have found a link between defendants and contraband based on evidence that the defendants were carrying approximately the same amount of money as carried by Sorrells in this case. *See Johnson v. State*, No. 10-06-00078-CR, 2007 Tex. App. LEXIS 2001, at *9 (Tex. App.—Waco March 14, 2007, pet. ref'd) (mem. op., not designated for publication) (link established where evidence showed that defendant had $516); *Bean v. State*, Nos. 05-06-01487-CR, 05-06-01488-CR, 05-06-01489-CR, 2007 Tex. App. LEXIS 8914, at *14 (Tex. App.—Dallas Nov. 8, 2007, pet. ref'd) (mem. op., not designated for publication) (link established where evidence showed defendant had more than $500).

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to establish that Sorrells was in possession of the cocaine. Given the evidence that Sorrells carried the ice chest to the car; sat in close proximity to the ice chest; was one of only two people who had access to the ice chest when an officer saw an arm reach behind the seat, open the ice chest, and reach inside the ice chest; was in a car with other drugs that were in plain view; and was carrying a large amount of cash; a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Swearingen*, 101 S.W.3d at 95.

Viewing the evidence in a neutral light, we also conclude that the evidence is factually sufficient to establish that Sorrells was in possession of the cocaine. Although the officer who saw one of the backseat passengers reach behind the seat and open the ice chest could not determine whether it was Sorrells or the man sitting next to him who did so, the evidence that Sorrells carried the ice chest to the car and that he was carrying a large amount of cash, and the fact that there is no such evidence against the man who was sitting next to him, is sufficient to support the jury's verdict. *See Watson*, 204 S.W.3d at 414-15. As previously stated, the force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *See Brown*, 911 S.W.2d at 748; *Figueroa*, 250 S.W.3d at 501.

#### B. Intent

To prove that a defendant intended to deliver a controlled substance, the State must show that the defendant intended to "transfer, actually or constructively," a controlled substance to another person. *See* Tex. Health & Safety Code Ann. §§ 481.002(8). Factors that courts have considered in determining whether the accused had the intent to deliver include: (1) the nature of

8

the location at which the accused was arrested; (2) the quantity of drugs in the accused's possession; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia for either use or sale; (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *See Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). Expert testimony by experienced law-enforcement officers may also be used to establish an accused's intent to deliver. *See Utomi*, 243 S.W.3d at 82.

The evidence presented to the jury included: a chemist's testimony that the cocaine found in the ice chest weighed approximately thirty-two grams; Officer Cadena's testimony that there were "multiple rocks" of cocaine found in the ice chest, that a personal-use amount of cocaine would be only one rock, and that based on his five years of street-patrol experience, the cocaine was a "very large" amount of cocaine consistent with an amount a dealer would carry for deliveries; Officer Sanchez's testimony that people using cocaine for themselves use only one rock and that based on his nine years of experience in the police department, the multiple rocks of cocaine found in the ice chest were not consistent with personal use but were consistent with an amount carried by drug dealers; and Officer Beasley's testimony that Sorrells was carrying $537.21 in cash at the time of the traffic stop.

Considering the volume of cocaine found in the ice chest, the expert testimony of experienced law-enforcement officers as to the implications of the volume of cocaine, and the amount of cash found on Sorrells, we conclude that the evidence is legally sufficient to support the jury's determination that Sorrells intended to deliver the cocaine. We also conclude that the

9

evidence is factually sufficient to support such a determination because there is no evidence in the record contradicting any of the officers' testimony, nor is the cumulative force of the officers' testimony so weak that the verdict seems clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15.

## C. Conclusion Regarding Sufficiency of the Evidence

Because we have concluded that the evidence is legally and factually sufficient to support Sorrells's conviction, we overrule Sorrells's first issue.

### *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting *Strickland* two-prong test). To establish deficient performance as a matter of law under the first prong, a defendant must show that no reasonable trial strategy could justify counsel's conduct. *See Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A defendant establishes prejudice under the second prong if he shows that a reasonable probability exists that, but for the deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App.

2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the wide range of reasonable professional assistance. *Id*. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id*. In most cases, an undeveloped record on direct appeal is insufficient to satisfy the requirements of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814.

Sorrells alleges that his trial counsel provided ineffective assistance by failing to properly object to: (1) the admission of contextual evidence showing the existence of warrants for Sorrells's arrest; and (2) certain statements made in a patrol-car video of the traffic stop of the car in which Sorrells was traveling. We address each allegation in turn.

### A.      Admission of Contextual Evidence

In his first allegation of ineffective assistance, Sorrells argues that his trial counsel was deficient in failing to properly object to the admission of contextual evidence showing the existence of warrants for Sorrells's arrest. Before trial, Sorrells's trial counsel filed a motion in limine that sought to exclude any references to extraneous offenses or "an open warrant." In a pre-

11

trial hearing on the matter, the prosecutor argued that the State needed to refer to the open warrant for Sorrells's arrest because doing so explained why the police officers were outside the home where Sorrells was located and why the officers then followed and stopped the car in which he was traveling. The trial judge agreed, stating that "you can't have two cops dropping down from a space ship." The trial judge further explained that juries were sensitive to issues like racial profiling and police-officer abuse and may begin speculating about such things if they were not informed of the reasons why the police officers observed and stopped Sorrells.

After further discussion about the issue, the trial court determined that a reference to "a warrant" would be sufficient to explain the reason for the stop. The prosecutor then explained that the problem with using only a "warrant" rather than "warrants" was that in the video of the traffic stop, the officers used the two terms interchangeably. The prosecutor furthered explained that the State had already redacted several portions of the video in which references were made to an "aggravated assault," and it would be difficult to also redact all the portions where officers used the term "warrants" because it happened frequently throughout the video. The trial court ultimately determined that the State and its witnesses could refer to either warrant or warrants but that defense counsel was welcome to ask for a limiting instruction at any point, and the court would comply with his request.

The first portions of testimony of which Sorrells complains on appeal are ones in which Officer Cadena testified as to his and other officers' reasons for surveilling the house where Sorrells was located. In the first portion, Cadena stated that he and other officers were surveilling

12

the house because they had "obtained information that [Sorrells] had a warrant." In the second portion, Cadena stated:

> We set up on a house . . . and we were specifically looking for [Sorrells]. We observed some activity; however, we did not see [Sorrells]. Some of the members of our unit broke off and checked side streets, in which case one officer spotted [Sorrells], and then we moved our surveillance to that other location.

Defense counsel did not object to either portion of Cadena's testimony. However, after Cadena finished testifying, defense counsel requested a limiting instruction from the trial court regarding references to a warrant. The trial court complied, stating:

> Ladies and gentlemen of the jury, I am going to give you an instruction to guide you in consideration of certain evidence. The evidence concerns testimony of an existing warrant on this defendant, testified to by this officer, and you may hear testimony in the remainder of the trial from other witnesses concerning an existing warrant at the time of this stop on this occasion.
>
> Listen carefully as I read this instruction to you at this time. Evidence concerning an existing warrant against this defendant is not any evidence of the defendant's guilt in this case, and is no evidence that the defendant is or was guilty of any offense, including the case for which the warrant existed. The sole purpose for which the evidence is offered is to put in context the circumstances under which the defendant was confronted by police officers.

On appeal, Sorrells claims that defense counsel provided deficient performance by failing to make a pre-trial request for the trial court to prohibit any mention of the fact that Sorrells was the target of the officers' surveillance. Sorrells suggests that defense counsel could have avoided the need for such testimony by requesting a joint stipulation that the surveillance and the traffic stop were legal or by requesting that officers state only that they obtained information causing them to surveil the area and then observed Sorrells placing the ice chest into the car. However,

13

Sorrells did not file a motion for new trial in this case, and the record remains undeveloped as to defense counsel's reasons for not requesting such an instruction. In the absence of a developed record, we presume a sound trial strategy. *See Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814.

Further, defense counsel had already addressed the issue of references to a warrant or warrants with regard to officers' reasons for surveilling the area, and the trial court explained that such references were necessary to explain the officers' surveillance of the house and the eventual traffic stop of the car that left the house. Defense counsel also requested a limiting instruction as to any references to warrants, and the trial court complied with the request. Defense counsel could have reasonably determined that, given the trial court's concerns about creating a context for the surveillance and traffic stop, a limiting instruction was the best option for addressing the situation. Further, defense counsel could have reasonably concluded that the limiting instruction was sufficient to cure any error caused by references to warrants for Sorrells's arrest. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (jury presumed to follow trial court's instructions when no evidence presented to rebut presumption).

The second portion of testimony of which Sorrells complains is one in which Officer Sanchez is asked what Sorrells was charged with at the time of his arrest and replies, "He had outstanding warrants, felony warrants for his arrest . . . ." At that point, defense counsel asked to approach the bench, where he requested that the trial court instruct the jury to disregard Sanchez's last remark. The trial court complied with the request. On appeal, Sorrells asserts that defense counsel provided deficient performance by failing to request a mistrial. However, the record is silent

14

as to defense counsel's reasoning for not requesting a mistrial, and we therefore presume a sound trial strategy. *See Ortiz*, 93 S.W.3d at 88-89; *Thompson*, 9 S.W.3d at 814. In addition, an instruction to disregard inadmissible testimony is generally sufficient to cure any error caused by the testimony. *See Delgado v. State*, 986 S.W.2d 306, 309 (Tex. App.—Austin 1999, no pet.); *Whitaker v. State*, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998). A mistrial, on the other hand, is appropriate for only a narrow class of highly prejudicial and incurable errors. *See Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Thus, defense counsel could have reasonably concluded that an instruction to disregard the inadmissible testimony was sufficient to cure any error created by the testimony, especially considering that the trial court had already given the jury a limiting instruction regarding any references to warrants for Sorrells's arrest.

The third portion of testimony of which Sorrells complains is one in which Officer Beasley testified about conducting a traffic stop of the car in which Sorrells was traveling. The testimony occurred in the following exchange between the prosecutor and Beasley:

Beasley: Because of the situation, we generally like to do like a felony stop. It is a high-risk stop. We kind of position ourselves behind the vehicle, so the vehicle rolled to a stop. My vehicle was parked at the right side of the other police vehicle, and I saw the vehicle pull up and then stop. We went from there and proceeded with getting everybody out.

State: When you say high-risk stop, you mean you want to take all the precautions you can?

Beasley: Yes.

State: Just in case something might go wrong?

15

Beasley:    Yes. Usually the units that call us are surveilling somebody of interest. Generally it is an important thing.

At that point in the exchange, defense counsel asked to approach the bench and stated, "We are sort of heading down that same trail. I want to be sure the officer has been apprised." The prosecutor assured the trial court that the officer had been informed of what he could and could not say, and the prosecutor stated, "I won't ask any more questions." The trial court then suggested to the prosecutor that he ask somewhat leading questions if he wanted to pursue similar subjects in the future so as to guide the State's witnesses to avoid any inadmissible testimony. The prosecutor indicated that he would do so.

On appeal, Sorrells alleges that his defense counsel provided deficient performance by failing to properly object to the testimony or move for a mistrial. However, because the record is once again silent as to defense counsel's reasoning for his actions, we presume a sound trial strategy. *See Ortiz*, 93 S.W.3d at 88-89; *Thompson*, 9 S.W.3d at 814. Further, the only additional testimony that arose in the exchange was that officers considered the traffic stop a "high-risk stop" and an "important thing." Jurors had already heard testimony to the effect that Sorrells had felony warrants for his arrest and that he was a person of interest to the surveillance unit, and the trial court had already instructed the jury to limit or disregard certain portions of the testimony. In addition, defense counsel approached the bench upon hearing the offending testimony, and further questioning did not continue until after the prosecutor indicated that he would not ask any more questions on the subject. Given the circumstances, defense counsel could have reasonably concluded that his actions were sufficient to address the situation.

16

A final portion of testimony of which Sorrells complains is one in which Officer Cadena was asked why he and other officers would need to search the ice chest found in the back of the car in which Sorrells was traveling, and Cadena responded: "It would have been very easy for either one of the two rear passengers to reach into that rear cooler and grab potentially a weapon or any other instrument that could hurt us or anybody else in the community, which is why that cooler needed to be checked." On appeal, Sorrells asserts that his defense counsel provided deficient performance by failing to object to the testimony on the ground that the testimony suggested that Sorrells was carrying a weapon or was otherwise dangerous. Because the record is silent as to defense counsel's reasoning for not objecting, we presume a sound trial strategy. *See Ortiz*, 93 S.W.3d at 88-89; *Thompson*, 9 S.W.3d at 814. Further, there was no evidence introduced at trial to suggest that there were in fact any weapons found in the ice chest or anywhere else at the scene. In addition, defense counsel challenged the testimony during his cross-examination of Cadena:

Defense:     And I am a little perplexed about this cooler. You had testified earlier you thought maybe there might be weapons in there or something to that effect; is that correct?

Cadena:     That is correct.

Defense:     If you guys are being so cautious with the cooler thinking there [are] weapons in it, why would you allow the lid to open up and drop it on the ground if there . . . is [sic] if you think there is a gun in there?[2]

Cadena:     It is possible.

---

[2] Cadena had testified that "the cooler kind of fell to its side when [officers] set it down, and the cooler opened."

| Defense: | It would take two seconds to stand up and set the thing down on the floor correctly, would it not? |
|---|---|
| Cadena: | True. |

Given all the circumstances, defense counsel could have reasonably determined that he would address the testimony during cross-examination and that an objection to the testimony was not warranted.

Because the record is undeveloped with regard to defense counsel's reasoning for his actions, and because his actions could reasonably have been part of a sound trial strategy, we conclude that Sorrells has not proven by a preponderance of the evidence that defense counsel provided deficient performance with regard to the contextual evidence admitted at trial. *See Strickland*, 466 U.S. at 689.

## B. Admission of Statements Made in Video

In his second allegation of ineffective assistance, Sorrells contends that his trial counsel was deficient because he failed to properly object to certain statements made in a patrol-car video of the traffic stop of the car in which Sorrells was traveling.[3] Specifically, Sorrells complains of the following parts of the video: (1) a dispatcher's statement that "he has two felonies"; (2) a police officer's statement that "Derrick has two"; (3) Sorrells's request to police officers that they

---

[3] In the video, police officers stop the car in which Sorrells is traveling and then direct each of the four men out of the car, one by one. Officers then take the men out of range of the video camera and begin searching the car. For most of the rest of the video, various voices are audible at different times but are not necessarily intelligible and cannot necessarily be matched with specific people, as the people speaking are often outside the camera's range.

tell him "who called on him"; (4) a police officer's statement that "that's our boy"; and (5) Sorrells's statement to the effect that he was sorry that the officers "had to come find [him] for this again." Sorrells first contends that his trial counsel should have objected to the admission of any statements made by him on the ground that the police officers at the traffic stop failed to read him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). He also contends that his trial counsel should have objected to the admission of any statements referencing other crimes based on rule 404(b) of the Texas Rules of Evidence. *See* Tex. R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

To begin with, the record does not establish that officers did not read Sorrells his *Miranda* rights. In citing to the record for this argument, Sorrells cites only to his trial counsel's opening argument, in which trial counsel stated that Sorrells was not read his *Miranda* rights, and to the video, in which there is no evidence that Sorrells was read his rights. However, defense counsel's argument to the jury is not evidence, *see Hutch v. State*, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996), and the absence of audible *Miranda* warnings in the video does not necessarily establish that they were not given. There are a multitude of voices on the videotape, many of which are unintelligible, and the video camera covered only some of the events associated with the traffic stop. Thus, the record does not establish that officers did not read Sorrells his *Miranda* rights. Further, we presume trial counsel's strategy was sound given that the record is silent as to his reasoning. *See Ortiz*, 93 S.W.3d at 88-89; *Thompson*, 9 S.W.3d at 814. Accordingly, we conclude that trial counsel was not deficient in declining to object to the video based on *Miranda*.

19

We also conclude that trial counsel was not deficient in failing to object to references made to other crimes committed by Sorrells. As previously mentioned, the trial court had already determined that references to one or two warrants for Sorrells's arrest were admissible as contextual evidence, and had already provided a limiting instruction regarding the jury's consideration of any references to warrants for Sorrells's arrest. Also, the statements made in the video, such as the dispatcher's statement that "he has two felonies," were made amid a multitude of voices and without reference to any particular person. For example, the dispatcher could have been referring to any one of the four men taken from the car when stating that "he" had two felonies. An officer's later statement that "Derrick has two" provides Sorrells's first name, but it is also one of many unidentifiable voices and was not made in reference to any particular subject. Given the limiting instruction already provided by the trial court, the unintelligibility of much of the language in the video, the difficulty in establishing who is speaking in the video, and the applicable presumption of a sound trial strategy, we conclude that Sorrells has failed to show that trial counsel provided deficient performance in declining to object to comments made in the video.

### C. Conclusion Regarding Ineffective Assistance

Because we have concluded that Sorrells's trial counsel was not deficient in declining to object to references to warrants for Sorrells's arrest and certain statements made in a video of the traffic stop of the car in which Sorrells was traveling, we hold that Sorrells has failed to carry his burden of proving by a preponderance of the evidence that his trial counsel provided ineffective assistance. *Strickland*, 466 U.S. at 687-89.

**CONCLUSION**

Given our determination that the evidence is legally and factually sufficient to support Sorrells's conviction and that Sorrells has failed to carry his burden of proving by a preponderance of the evidence that his trial counsel provided ineffective assistance, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   April 9, 2010

Do Not Publish

21